*128 ORDER VACATING ARBITRATION AWARD OF ATTORNEY FEES AND COSTS
SUZANNE O JIB WAY TOWNSEND, Judge.
I. ISSUE PRESENTED
Petitioner, the Confederated Tribes of the Grand Ronde Community of Oregon (“the Tribe” or “Petitioner”) asks the Court to vacate or modify the award of $1,723,191.10 it was ordered to pay to Respondents Strategic Wealth Management (“SWM”), Patrick Sizemore, Paradigm Financial Service, Inc. (“Paradigm”) and Mark Sizemore. This award represents attorney fees and costs to be paid to Respondents as prevailing parties, and is part of the Final Award dated August 13, 2004, in American Arbitration Association (AAA) Case No. 75 Y 181 00066 03JRJ, Confederated Tribes of the Grand Ronde Community of Oregon, Claimant and Strategic Wealth Management, Inc., Patrick Size-more, Paradigm Financial Services, Inc., and Mark Sizemore, Respondents.
Petitioner contends that the arbitration panel did not have authority to issue an award of attorney fees and costs against the Tribe because the Tribe did not waive its sovereign immunity with respect to an affirmative award of attorney fees and costs.
Respondents SWM and Patrick Size-more point to SWM’s contract with the Tribe, and contend that the arbitration clause in that agreement constitutes a waiver of the Tribe’s sovereign immunity for all claims brought by SWM and Patrick Sizemore, including its claim for “prevailing party” fees such as those awarded by the arbitrators.
Respondents Paradigm and Patrick Sizemore contend that a Stipulation to Arbitrate signed by the Tribe’s attorney was sufficient as a waiver of the Tribe’s sovereign immunity. Specifically, Respondents argue that because attorneys for the Tribe agreed to arbitrate the claims of Respondents Paradigm and Mark Sizemore pursuant to AAA rules that included a provision allowing arbitrators to award attorney fees and costs in certain circumstances, the Tribe waived its sovereign immunity with respect to such an award.
II. BACKGROUND
The parties do not dispute the relevant facts concerning their history and prior relationship.
*129 In 1992, the Tribe selected Respondent SWM to provide financial and investment advice and services to the Tribe. The decision to hire SWM was made by the Grand Ronde Tribal Council at a meeting on January 8, 1992. The minutes from that meeting provide in relevant part as follows:
“* * * *[The Tribal Controller] suggested the Council consider selecting a portfolio method of investing funds whereby the money would be invested in a number of different areas (i.e., stock market, C.D.’s). Resolution No. 002-92—Fallowing further explanation, [Councilman Ray MeKnight] moved to adopt a resolution to authorize moving the Tribal funds from the Bureau of Indian Affairs to private money managers to insure better earnings and more accountability of the funds. [Councilwoman Kathryn Harrison] seconded the motion. Motion carried by a vote of 7 yes, 0 no and 0 abstentions.”
The minutes indicate that the January 8, 1992, Tribal Council meeting was held at the “Tribal Office.” [1]
Resolution No. 002-92, which was approved by Tribal Council at the January 8, 1992, meeting, provides as follows:
“NOW, THEREFORE BE IT RESOLVED, that the Tribal Council for the Confederated Tribes of the Grand Ronde Community of Oregon hereby adopts the Tribal Trust Fund Investment Policy and authorizes the Tribal Chairman, Executive Officer, Finance Officer and one other Tribal Council member designated by the Tribal Chairman to execute the investment policy agreement with Strategic Wealth Management and to make tactical allocations as necessary throughout the life of this agreement.”
On January 9, 1992, the Tribe and Respondent SWM entered into an Investment Advisory Agreement (“1992 Agreement”) the terms of which provides that SWM would provide financial advice, training, consulting and investment services to the Tribal Council and to other Tribal managers and executives. The 1992 Agreement was signed on behalf of the Tribe by Ray L. MeKnight, Council Member, Jim Willis, General Manager, Mark A. Mereier, Chairman and Pat Mercier, Controller. Patrick Sizemore, President of SWM, signed on behalf of SWM. The Agreement was signed at the Tribal Offices. See, Affidavit of Patrick Sizemore in support of Respondent SWM’s Motion to Change Venue, Multnomah County Circuit Court Case No. 01-11-11623.
The 1992 Agreement did not contain an attorney fees clause authorizing an award of fees to a prevailing party in subsequent actions under the Agreement.
Section ll(i) of the 1992 Agreement is a “choice of laws” provision that provides as follows:
The validity of this Agreement and of any of its terms or provisions, as well as the rights and duties of the parties hereunder shall be governed by the laws of the State of Washington.
Section 11(h) of the 1992 Agreement provides as follows;
All controversies which may arise between Client and Advisor concerning any transaction or the construction, performance or breach of this or any other agreements (sic ) between them whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Arbitration is final and binding on the parties. The parties are *130 waiving.their.right-to seek remedies in court, including the right to jury trial. Pre-arbitration discovery is generally more limited than and different from court proceedings. The arbitrator’s award is not required to include factual findings or legal reasoning and any party’s right to appeal or to seek modification of rulings by the arbitrators is strictly limited. The panel of arbitrators, will typically include a minority of arbitrators who were or are affiliated with the securities industry. Any arbitration shall be in accordance with the rules then applying of the American Arbitration Association, New. York Stock Exchange or the National Association of Securities Dealers, at Client’s election. If Client fails to make this election within five days of receipt of a written request, then he authorized Advisor to make this election. The award of the arbitrators or of the majority of them, shall be final and judgement (sic ) upon the reward (sic) rendered may be entered into any court State or Federal, having jurisdiction. Client specifically agrees that at least one of the arbitrators must be knowledgeable to (sic) the type of securities transactions in his account or knowledgeable as to any investment recommended or effected (sic) on his behalf.
Patrick Sizemore provided the bulk of the initial services under the 1992 Agreement. Significant services were provided by SWM (through its President, Patrick Sizemore) on the Reservation by way of meetings, conferences, training sessions, financial updates, accounting reports and communications, both in person and by letter. See, Respondent SWM’s Motion for Change of Venue in Multnomah County Circuit Court Case No. 01-11-11623.
In 1998, SWM presented a group of loans to the Tribe that had been brokered by Respondent Paradigm. Mark Size-more, a brother of Patrick Sizemore was the President of Paradigm. Thereafter, the Tribe invested in at least 27 loans that had been brokered by Paradigm. Paradigm received brokerage fees on each loan, paid by the Tribe.
Disputes arose between the Tribe and SWM, and between the Tribe and Patrick Sizemore, Mark Sizemore and Paradigm. The Tribe combined its claims against all Respondents and filed suit in Multnomah County Circuit Court in Confederated Tribes of the Grand Ronde Community of Oregon v. Strategic Wealth Management Inc., et al., Case No. 01-00-11623. The Tribe alleged claims against all Respondents under the Oregon Securities Act and for common law breach of fiduciary duty, fraud, negligent misrepresentation and breach of contract. The Tribe’s claims involved both the 1992 Agreement with SWM and certain later agreements and dealings involving investment advice and related activities provided by SWM and the other Respondents.
Respondents sought to change the venue of the Tribe’s suit from Multnomah County, Oregon to Yamhill County, Oregon on the basis that none of the Respondents resided or were domiciled in Multnomah County and because the services at issue had been performed in Yamhill County, Oregon, at the Tribal Offices. The motion for change of venue was denied.
Respondents SWM and Patrick Size-more thereafter moved to compel arbitration under section ll(h)of the 1992 Agreement. By order dated December 2, 2002, Judge Nely Johnson of the Multnomah County Circuit Court granted the motion to compel arbitration, finding that the claims against SWM and Patrick Sizemore were subject to arbitration pursuant to ORS 36.310 and the above-referenced paragraph 11(h) of the 1992 -Agreement.
*131 Prior to Judge Johnson’s order compelling arbitration, the parties stipulated that the claims against Respondents Paradigm and Mark Sizemore would be subject to binding arbitration “together with” the Tribe’s claims against Respondents SWM and Patrick Sizemore. The Stipulation Regarding Rinding Arbitration (“the Stipulation”) was signed on behalf of the Tribe by Attorney Stephen S. Waters, and was filed in Multnomah County Circuit Court Case No. 01-11-11623 on December 2, 2002. The Stipulation provides as follows:
[The Confederated Tribes of the Grand Ronde Community of Oregon] and defendants Paradigm Financial Services, Inc. (“PFS”) and Mark Sizemore, through their attorneys of record, hereby stipulate to binding arbitration of all claims between them arising from the transactions and dealings currently the subject of this lawsuit. Such claims shall be arbitrated before the American Arbitration Association together with the claims between plaintiff and defendants Strategic Wealth Management, Inc. and Patrick Sizemore.
On January 24, 2003, the Multnomah County Circuit Court dismissed without prejudice the claims against Respondents Paradigm Financial Services and Mark Sizemore and referred the claims against Respondents SWM and Patrick Sizemore to arbitration.
On or about February 3, 2003, the Tribe filed a Demand for Arbitration with the American Arbitration Association (“AAA”.) Three AAA arbitrators were assigned to hear the Tribe’s claims. Over the Tribe’s objections as to the location, the arbitration hearings were held in Seattle, Washington over several days in March and April, 2004. The Final Award was issued on August 13, 2004.
The Final Award denied all of the Tribe’s claims against all Respondents. The Final Award further included an affirmative award of attorney fees and costs against the Tribe in the following amounts:
In favor of Respondents SWM and Patrick Sizemore:
$1,273,395.00 in attorney fees,
$ 158,007.00 in costs;
$ 39,621.79 in arbitrator compensation costs
In favor of Respondents Paradigm and Mark Sizemore:
$ 145,375.00 in attorney fees,
$ 6,485.00 in costs;
$ 1,250.00 in AAA expenses;
$ 99,057.41 in arbitrator compensation costs.
In their Final Award, the arbitrators noted that the 1992 Agreement did not contain an attorney fees provision. However, the arbitrators reasoned that because the AAA rules in effect at the time of the arbitration authorized the arbitrators to “grant any remedy or relief that the arbitrator deems just and equitable within the scope of the agreement of the parties”, they were authorized to look beyond the agreement to the Oregon Securities Law.[2] The arbitrators found authority for the award of. attorney fees and costs in the prevailing party “fee shifting” provisions of Oregon Securities Law, general Oregon law concerning the award of attorney fees and costs, and AAA Rules. See Final Award, page 43.
In footnote 22 to the Final Award, the arbitrators described the history of the *132 AAA rules with respect to attorney fees as follows:
Rule R-43(a) [July 1, 2003 ed.] provides that “[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties* * *.” A similar provision has appeared in the AAA rules since at least 1991. See R-45(a) LJanuary 1, 2003, July 1, 2002, September 1, 2000 and January 1, 1999 editions]; Rule R-43 [July 1, 1990, November 1, 1993, May 1, 1992 and January 1, 1991 editions.] Since January 1, 1999, AAA Rules have specifically addressed awards of attorney fees, providing that “The award of the arbitrator(s) may include * * an award of attorneys’ fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.” See “rule R-43 (d) [July 1, 2003 ed.]; Rule R-45(d) [January 1, 2003, July 1, 2002, September 1, 2000 and January 1, 1999 editions]. Unless otherwise stated, all references in this Section to “AAA Rules” or “Rules” are to the July 1, 2003, edition of the AAA’s Commercial Arbitration Rules.” (Final Award, page 43.)
The Tribe objected to Respondents’ applications for attorney fees and costs in the arbitration proceeding on the basis that the Tribe had not waived its sovereign immunity with respect to such an affirmative awai'd. In response, the arbitrators determined that the Tribe had waived its immunity from suit generally with respect to SWM in the 1992 Agreement and that such a general waiver encompassed an award of attorney fees and costs. The arbitration panel determined that the Tribe had also waived its sovereign immunity with respect to Patrick Sizemore individually, even though he was not a signatory to the 1992 Agreement. The panel noted that the Multnomah County Circuit Court had compelled arbitration of the Tribe’s claims against both SWM and Patrick Sizemore under the 1992 Agreement, and thus applied that decision as the “law of the case.”
With respect to Respondents Paradigm and Mark Sizemore, the arbitrators acknowledged that these Respondents were not signatories of the 1992 Agreement, or to any other contract binding the Tribe to arbitration. However, the arbitrators determined that the Stipulation and later Multnomah County Circuit Court Order implementing that stipulation constituted a waiver of the Tribe’s sovereign immunity.
Petitioner filed its Petition to Vacate Award of Attorney Fees and Costs in Final Arbitration Award in this Court on August 17, 2004. Respondents thereafter moved to dismiss the case for lack of jurisdiction. On December 20, 2004, Judge Katharine English issued this Court’s order denying the motion to dismiss.
Thereafter, the parties extensively briefed the legal issues involved and presented oral argument to the Court. Following oral argument, additional briefing was allowed by the Court.
The Court has carefully considered both the oral argument presented to the Court and the following materials submitted by the parties:
1. Petition to Vacate Arbitration Award dated August 16, 2004;
2. Petitioner’s Motion to Vacate Award of Attorney Fees and Costs in Final Arbitration Award dated August 16, 2004;
3. Affidavit of Rob Greene in Support of Petitioner’s Motion to Vacate Award of Attorney Fees and Costs in Final Arbitration Award and attachments dated August 16, 2004;
*133 4. Respondent’s Motion to Dismiss For Lack of Jurisdiction dated September 10, 2004;
5. Petitioner’s Response to Respondents’ Motion to Dismiss filed October 9, 2004;
6. Affidavit of Rob Greene in Support of Petitioner’s Response to Respondents’ Motion to Dismiss and attached exhibits dated October 8, 2004;
7. Respondent’s Reply Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction dated October 22, 2004;
8. Answer to Petition to Vacate Arbitration Award, dated January 12, 2005;
9. Respondent’s Memorandum in Opposition to Petitioner’s Motion to Vacate Arbitration Award dated January 12, 2005;
10. Declaration of Walter E. Barton and attached exhibits dated January 21, 2005;
11. Reply in Support of Motion to Vacate Award of Attorney Fees and Costs in Final Arbitration Award, dated February 4, 2005;
12. Respondent’s Supplemental Memorandum in Opposition to Petitioner’s Motion to Vacate Arbitration Award dated April 22, 2005;
13. Petitioner’s Objections to Respondents’ Supplemental Memorandum in Opposition to Petitioner’s Motion to Vacate Arbitration Award dated May 3, 2004 (sic ); and
14. Petitioner’s Additional Response to Respondent’s Supplemental Memorandum dated May 31, 2005.
III. ANALYSIS
A. JURISDICTION
This Court has previously considered the issue of both its personal and subject matter jurisdiction in this matter in response to Respondents’ Motion to Dismiss. We incorporate the analysis set out in the earlier Order Denying Motion to Dismiss and repeat here the most salient points.
1. PERSONAL JURISDICTION
A. TRIBAL CODE
Section 310(d)(1)(A) of the Tribal Court Ordinance describes this Court’s jurisdiction in relevant part as follows:
* * * all civil actions where there are sufficient contacts with the Grand Ronde Reservation upon which to base jurisdiction consistent with the Constitution and laws of the Tribe and the United States. It is the intent of this paragraph to authorize the broadest exercise of jurisdiction consistent with these limitations. Without limiting the foregoing, the Court shall have jurisdiction over the following matters: proceedings involving* * * contracts to which the Tribe is a party; * * *
We first note that nothing in the Tribal Court Ordinances limits this Court’s jurisdiction to those contracts, such as the 1992 Agreement, that are in writing. And, the Tribal Court Ordinance does not limit the Court’s jurisdiction to only those activities that involve a contract, formal or otherwise. Rather, the Ordinance sets out a Very broad jurisdictional provision that encompasses “all civil actions where there are sufficient contacts with the Grand Ronde Reservation upon which to base jurisdiction consistent with the Constitution and laws of the Tribe and the United States.”
*134 We find nothing in the laws of the Tribe or the Tribal Constitution to prohibit this Court from taking personal jurisdiction over Respondents in this matter; indeed based on the facts described above, taking jurisdiction over Respondents is fully consistent with the provisions of the Tribal Court Ordinance.
B. FEDERAL LAW
With respect to federal law, Petitioner and Respondents provide differing analyses regarding whether and how this Court should apply the Montana tests to determine whether this Court has personal jurisdiction over the Respondents, none of whom is a member of the Confederated Tribes of the Grand Ronde Community of Oregon.
Petitioner contends that the Montana and Strate eases may be inapplicable here, because those cases involve tribal regulation of or adjudication of off-reservation activities of non-members. This Court finds it unnecessary to make that determination because, assuming for the purposes of this case that the holdings do apply to limit the Court’s jurisdiction as Respondents contend, the activities at issue fit within both of the exceptions to Montana’s “general proposition” limiting Tribal Court jurisdiction over non-members.
In Montana, the U.S. Supreme Court reviewed a narrow regulatory issue concerning whether a Tribe may prohibit nonmembers from hunting or fishing on reservation land owned in fee by nonmembers of the Tribe. Montana v. United States, 450 U.S. 544, 557, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) As part of its analysis, the Montana court set out what the U.S. Supreme Court in Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), later described as a more “general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: * * * ” Strate v. A-1 Contractors, 520 U.S. 438, 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).
The exceptions, as described in Montana and Strate, provide that the Tribes retain inherent sovereignty to exercise power over non-Indians on their reservations in at least two circumstances:
1. "A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.” Montana,, 450 U.S. at 565, 101 S.Ct. 1245;
2. “A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity,. the economic security, or the health or welfare of the tribe.” Montana, 450 U.S. at 565, 101 S.Ct. 1245;
As the Strate Court points out, the types of cases that the Court in Montana, had in mind when it described these exceptions is illustrious of that Court’s analysis:
Montana’s list of cases fitting within the first exception, see 450 U.S. at 565-566, 101 S.Ct. 1245, indicates the type of activities the court had in mind: Williams v. Lee, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (declaring tribal jurisdiction exclusive over lawsuit arising out of on reservation sales transaction between nonmember plaintiff and member defendants): Morris v. Hitchcock, 194 U.S. 384, 24 S.Ct. 712, 48 L.Ed. 1030 (1904) (upholding tribal permit tax on nonmember owned livestock *135 within boundaries of the Chickasaw Nation); Buster v. Wright, 135 F. 947, 950 (C.A.8 1905)(upholding Tribe’s permit tax on nonmembers for the privilege of conducting business within Tribe’s borders; court characterized as “inherent” the Tribe’s “authority * * * to prescribe the terms upon which noncitizens may transact business within its borders”); Colville, 447 U.S. at 152-154, 100 S.Ct. 2069 (tribal authority to tax on reservation cigarette sales to nonmembers “is a fundamental attribute of sovereignty which the tribes retain unless divested of it by federal law or necessary implication of their dependent status.”)
Strate, 520 U.S. at 457, 117 S.Ct. 1404.
Respondents argue that the arbitration was held in Seattle Washington, and, because the arbitration occurred off-reservation and involved nonmembers, neither of the Montana exceptions apply and this Court thus has no personal jurisdiction over Respondents. We reiterate our rejection of that characterization of this proceeding.
The issue being considered here is whether the Tribe waived its sovereign immunity with respect to the affirmative award of attorney fees and costs awarded against the Tribe in the arbitration Final Award. Thus, it is not the activity during the arbitration itself that this Court is considering; rather this action concerns those actions and activities that preceded the arbitration and that may or may not have resulted in a waiver of the Tribe’s sovereign immunity. Absent such a waiver of the Tribe’s sovereign immunity, the arbitrators had no authority to consider an affirmative award against the Tribe, and no court would have authority to enforce such an award. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Edüd 607 (1980); Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 34 (5th Cir. 1992) cert. denied, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993).
Relying on the entire relationship between the Tribe and Respondents, including the Tribal Council approval of the “investment policy agreement” with SWM and the investment services provided by the Respondents to analyze whether the exceptions described in Montana, is the more logical approach. Respondents are nonmembers who admittedly entered consensual relationships with the Tribe, either through a contract (SWM) and/or through a lengthy history of providing financial advice, services, and products on the Reservation to various officials and managers of the Tribe and being paid for such advice,(all remaining Respondents.) The financial advice, services and products the Respondents provided were, by Respondents own admission, provided to the Tribal Council and Tribal Managers at Tribal offices and in meetings of Tribal Council and other Tribal managers.
Measured against the cases described above, the faets of this case clearly demonstrate that each Respondent had significant and long term consensual relationships with the Tribe “of the. qualifying kind” to support Tribal Court jurisdiction. See Strate, 520 U.S. at 457, 117 S.Ct. 1404.
It is also clear from the facts of this case that the conduct under discussion “threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the Tribe.” Montana, 450 U.S. at 548, 101 S.Ct. 1245. The Tribe submitted evidence to demonstrate that the financial impact of this case would be onerous for the Tribe. See Affidavit of Lawrence J. Kovach in Support of Petition’s Response to Respondents Motion to Dismiss and Affidavit of Jeffrey S. Valentine in Support of Petitioner’s Response to Respondents’ Motion to Dismiss, (enforcement of the award would result in serious *136 adverse economic impact to the Tribe, including elimination or reduction of one or more Tribal programs.) However, while important, the immediate economic damage the Final Award would have on the Tribe is not the most important aspect of this Court’s analysis with respect to the second Montana exception.
Few aspects of the Tribe’s political integrity and economic security are more important than its sovereign immunity from suit. For this reason, determining whether a tribe has waived its immunity from suit is precisely the type of question that should be determined by the Tribal Court. National Farmers Union Insurance Cos. v. Crow Tribe, 471 U.S. 845, 855-50, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); Davis v. Mille Lacs Band of Chippewa Indians, 193 F.3d 990, 992 (8th Cir.1999).
The requirements of federal law, both with respect to the Montana, exceptions and under the analysis suggested by Respondents in International Shoe have been met. Petitioner has met its burden to demonstrate that this Court has personal jurisdiction over Respondents. This Court’s exercise of personal jurisdiction over the Respondents is proper under Tribal law and under federal law.
2. SUBJECT MATTER JURISDICTION
Subject matter jurisdiction is defined as a “court’s power to hear and determine cases of the general class or category to which the proceedings in question belong; the power to deal with the general subject involved in the action.” Black’s Law Dictionary (6th Ed.)
The authority of the Grand Ronde Tribal Court is set forth in the Tribe’s Tribal Code. Tribal Court Ordinance Section 310(d)(1)(A) gives this Court subject matter jurisdiction over:
* * * all civil actions where there are sufficient contacts with the Grand Ronde Reservation upon which to base jurisdiction consistent with the Constitution and laws of the Tribe and the United States. It is the intent of this paragraph to authorize the broadest exercise of jurisdiction consistent with these limitations. Without limiting the foregoing, the Court shall have jurisdiction over the following matters: proceedings involving* * * contracts to which the Tribe is a party; * * *
Despite Respondents’ desire to characterize the parties’ dispute as limited to the arbitration proceeding itself, the issues before this Court all revolve around the 1992 Agreement, the later contracts, written or oral, under which the various Respondents provided services to the Tribe, and the various consensual services the Respondents provided to the Tribe on the Tribe’s reservation.
Respondent also raised an issue under the provision of the 1992 Agreement which provides that judgment on the arbitration award “may be entered into any court, State or Federal, having jurisdiction.” Absent language that clearly designates a certain forum as the exclusive forum, such a clause is not mandatory, and does not exclude another court. Council of Laborers v. Pittsburg-Des-Moines Steel, 69 F.3d 1034, 1037 (9th Cir.1995) (To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.)
As noted above, all Respondents had significant relations with the Tribe such that this Court may extend personal jurisdiction over them in this action. Nothing in the contracts between the parties provides for jurisdiction exclusively in another court. The Tribal Court ordinance thus provides this Court with subject matter jurisdiction in this matter.
*137 B. SOVEREIGN IMMUNITY
The concept of sovereign immunity derives from the common-law concept that the sovereign cannot be sued without its consent. Nevada v. Hall, 440 U.S. 410, 414-415, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Indian Tribes enjoy sovereign immunity from suit similar to that enjoyed by the United States. Santa Clara, Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940). Sovereign immunity shields tribes from suits for monetary damages, and its purpose is to protect the Tribe’s assets from loss through litigation. Cogo v. Central Council of the Tlingit & Haida Indians, 465 F.Supp. 1286, 1288 (D.Alaska 1979). Only Congress or the Tribe itself may waive the Tribe’s immunity from suit. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).
As this Court has previously opined, tribal sovereign immunity is “rooted in the unique historical relationship between Indian tribes and United States government: Indian tribes are immune from suit because they are sovereigns predating the United States Constitution and because such immunity is necessary to preserve their autonomous political existence.” Guardi/pee, Case No. C-91-002-LJM at 2.4, (httpfhvww.grandronde. org /court/PublishedOpinions/GUARDI-PEE.PDF) (citing United States v. State of Oregon, 657 F.2d 1009, 1013 (9th Cir. 1981)); United States v. U.S. Fidelity and Guaranty Co., 309 U.S. at 512-13, 60 S.Ct. 653.[3]
An Indian Tribe is not subject to suit in state court for either on or off-reservation commercial conduct unless Congress or the Tribe has expressly waived the Tribe’s immunity from suit. Kiowa, 523 U.S. at 760, 118 S.Ct. 1700. As Respondents point out, it is not necessary that specific words waiving the Tribe’s immunity be included in a waiver. See, C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001). Still, such a waiver of sovereign immunity must be unequivocally expressed and it is to be narrowly construed. Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. 1670; United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).
There is a strong presumption against waiver of tribal sovereign immunity. Demontiney v. U.S., 255 F.3d 801, 812 (9th Cir,2001) (citing Pan American Co., v. Sycuan Band of Mission Indians, 884 F.2d 416, 419 (9th Cir.1989)). Waivers are “interpreted liberally in favor of the Tribe and restrictively against the claimant.” Maryland, Casualty Co. v. Citizens Nat. Bank of West Hollywood, 361 F.2d 517, 521 (1966). In all circumstances, including contract actions, overwhelming legal precedent provides that the sovereign immunity of an Indian Nation may not be waived by implication, but the waiver must be express. American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Tribe, 780 F.2d 1374, 1378 (8th Cir.1985) Courts generally will not infer a waiver from contract terms, however detailed. *138 American Indian Agricultural Credit Consortium, 780 F.2d at. 1378; Ramey Construction Co. Inc. v. Apache Tribe of Mescolero Reservation, 673 F.2d 315, 319 (10th cir 1982),
Finally, a voluntary waiver of sovereign immunity by an Indian tribe does not waive the Tribe’s immunity for cross-claims or counter-claims. United States v. U.S. Fidelity & Guaranty Co., 309 U.S. at 511-12, 60 S.Ct. 653; Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). And, a general waiver of sovereign immunity may not be construed to extend to attorney fees unless the sovereign has clearly indicated that it does. Fitzgerald v. United States Civil Service Commission, 554 F.2d 1186, 1189 (D.C.Cir.1977) (holding that a general provision in the Veteran’s Preference Act allowing the Veterans Commission “to take corrective action” was not a sufficiently express waiver of sovereign immunity to allow for the award of prevailing party attorney fees.)
That the government is generally not liable for prevailing party attorney fees can readily be ascertained by the existence of the Equal Access to Justice Act (“EAJA”), which waives the federal government’s immunity with respect to prevailing party attorney fees in certain circumstances.[4] Section 2412(b) of the EAJA allows courts to award attorneys fees against the federal government under generally applicable equitable exceptions to the “American Rule”[5], such as the exeep-tions allowing attorneys fees to be awarded against losing parties who disobey a court order or act in bad faith. And, the EAJA allows attorneys fees to be awarded under Section 2412(b) pursuant to generally applicable statutory fee-shifting provisions that do not expressly authorize such awards specifically against the United States. See H.R. Conf. Rep. No. 1434, 96th Cong., 2d Sess. 25 (1980); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8-9 (1980); S.Rep. No. 253, 96th Cong., 1st Sess. 3-4, 19 (1979).
Based on the history described above, it is clear that absent either a general waiver of immunity with respect to prevailing party attorney fees and costs under an applicable Tribal code provision or a clear specific waiver by the Tribe in a specific contract, the Tribe may not be assessed attorney fees and costs in any contractual dispute. For purposes of a waiver of sovereign immunity, this Court finds that if the Tribe did not specifically waive its immunity from an award of prevailing party attorney fees and costs, then there is no jurisdiction for a court to enforce such an award, either under the Oregon Securities Law or any other Oregon or federal law. This analysis is consistent both with the purposes of the sovereign immunity doctrine, with the long line of jurisprudence interpreting that doctrine and with the “American Rule” that recovery of prevailing party fees is not implicit, but must be found in either statute or contract. See, Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)[6]
*139 As discussed below, only Congress and the Tribe itself may waive the Tribe’s immunity from suit. Respondents do not argue that Congress has waived the Tribe’s immunity from suit. This Court, then, looks to the facts presented to determine whether the Grand Ronde Tribal Council expressed, clearly and unequivocally, its legislative intent to waive its sovereign immunity with respect to an affirmative award of prevailing party attorney fees and costs.
1. SWM AND PATRICK SIZEMORE
Respondents contend that, with respect to SWM and its President, Patrick Sizemore, the Tribe waived its sovereign immunity when it entered into the 1992 Agreement. The Court looks to both the specific provisions of that Agreement and the history surrounding its adoption to determine legislative intent.
As noted above, the arbitration clause contained in the 1992 Agreement does not contain an attorney fees provision. The arbitration clause provided only that:
Any arbitration shall be in accordance with the rules then applying of the American Arbitration Association, New York Stock Exchange or the National Association of Securities Dealers, at Client’s election.
At the time the 1992 Agreement was signed, the AAA rules did not provide for an affirmative award of attorney fees. Despite the fact that neither the underlying contract nor the AAA rules referred to in the contract contained a fee shifting provision with respect to prevailing party attorney fees and costs at the time the Grand Ronde Tribal Council issued its Resolution approving the 1992 Agreement, Respondents urge the Court to imply such a waiver from the language in the 1992 Agreement requiring “all controversies” to be submitted to arbitration. In the alternative, Respondents suggest that the Court look outside the 1992 Agreement to AAA rules put in place after the 1992 Agreement was signed, or to the Tribe’s use of Oregon securities laws to find a basis for the waiver.
With respect to an implied waiver, Respondents suggest a very expansive interpretation, arguing that because the arbitration provision in the 1992 Agreement requires the parties to arbitrate “all controversies” that may arise between Client and Advisor concerning “any transaction or the construction, performance or breach of this or any other agreement between them,” then any claim Respondents have with the Tribe necessarily provides Respondents with a potential recovery against the Tribe’s treasury. This Court declines to interpret the arbitration provision in the 1992 Agreement so broadly. To do so would fly in the face of traditional rules of statutory construction, which require courts to strive above all else to interpret the intent of the legislature. See e.g., Fifth Ave. Corp. v. Washington County, 282 Or. 591, 596, 581 P.2d 50, 54 (1978),
As noted above, Respondent SWM drafted the 1992 Agreement and *140 presented it to the Tribe. It is thus proper for this Court to construe the contract in the light most favorable to the Tribe. A more reasonable interpretation of the 1992 Agreement’s arbitration clause would limit the scope of the waiver to any claims arising directly under the contract for its breach, and perhaps to any claims necessarily or closely related to a breach of the Agreement. This interpretation does not necessarily or even incidentally include prevailing party attorney fees. Indeed, absent an attorney fee recovery clause in a statute or contract, recovery of attorney fees is generally not available. See, e.g., Mattiza v. Foster, 311 Or. 1, 4, 803 P.2d 723 (1990).
Respondents also point to the holding in C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 023 (2001) arguing that it is controlling here. In that case, the Citizen Band Pota-watomi Indian Tribe of Oklahoma signed a construction contract with C & L Enterprises that included an arbitration clause. After arbitration, an award was rendered in favor of C & L Enterprises in an amount that included damages and attorney fees. On appeal, the U.S. Supreme Court determined that the agreement the Potawatomi Indian Tribe had signed constituted a clear consent to arbitration and that such a consent constituted a clear waiver of the Tribe’s sovereign immunity from suit by C & L Industries, and also, by way of the choice of laws provision in the contract, constituted a consent to the enforcement of arbitral awards in Oklahoma State Court. Because the underlying arbitration award in C & L Enterprises included an award of attorney fees and costs, Respondents urge the Court to con-elude that the holding is dispositive here.
This Court finds no indication that the court in C & L Enterprises considered the scope of the Tribe’s waiver of sovereign immunity, and in particular the issue of whether the Tribe’s waiver was broad enough to include an affirmative award of attorney fees and costs against the Tribe. Neither does the Court find anything in the holding to indicate that the decision altered longstanding requirements that a waiver of sovereign immunity must be clear and unequivocally expressed.
Although the arbitral award reviewed by the Court in C & L Enterprises included an award of attorney fees and costs against the Tribe, the propriety of the attorney fee award was not explicitly addressed, nor does it appear that the Tribe specifically raised the issue of attorney fees and costs as a separate issue. Rather, the Court more generally concluded that under the specific circumstances and with respect to the specific language of the contract before the Court, the Tribe had “clearly consented to arbitration and to the enforcement of arbitral awards in Oklahoma State Court * * * ” and the matter was remanded back to State court for further proceedings. C & L Enterprises, 532 U.S. at 423, 121 S.Ct. 1589. The holding in C & L Enterprises is thus of little assistance regarding the question whether a Tribe waives immunity for an affirmative award of attorney fees merely by entering into a contract with an arbitration clause.[7]
And, even if the holding in C & L Enterprises applies such that the underlying *141 arbitration clause constitutes a clear waiver of the Tribe’s immunity with respect to its agreement to arbitrate and to have the arbitration award enforced in any court having jurisdiction to do so, (a determination this Court need not and does not make) it would not follow that the arbitration clause is also an express waiver of the Tribe’s immunity with respect to prevailing party fees and costs (or pre-judgment interest.)
With respect to Respondents’ contention that the Tribe waived its immunity for an award of attorney fees because the AAA rules had changed by the time the Tribe filed its suit and was ordered to arbitration, this Court finds little merit in that argument. It might be reasonable to interpret the arbitration provision as evidence of the Tribe’s intent to be bound by any procedural rules that the AAA had in place at the time a claim under the agreement was arbitrated. However, the interpretation Respondents urge goes well beyond that. To interpret the Tribal Council’s legislative action as intending to allow the scope of its waiver of immunity (and thus the degree of risk at which the public treasury was placed) to be substantively altered at will by later actions of an outside party is an interpretation this Court finds untenable. Such a broad construction of the Tribal Council’s intent would defeat the very protections intended by the doctrine of sovereign immunity.
And, even if Respondents are correct that the Tribe agreed to be bound by any future changes to the AAA rules, it would not necessarily follow that the Tribe’s agreement would provide authority for an arbitral award of prevailing party fees. This is so because under AAA rules, arbitrators would still require a statutory or contractual basis upon which to base such an award. See Final Award, page 44. This authority would be found only in the parties’ underlying contract (which it is not in this instance) or, in this case, in Oregon Securities Law.
Thus, the question becomes whether the Tribe waived its’ sovereign immunity with respect to an affirmative award of prevailing party attorney fees, simply by bringing suit under Oregon Securities Law. In answer to this question, cases interpreting waivers of sovereign immunity in the context of counterclaims and cross claims are more on point.
As discussed above, the United States Supreme Court has held that the United States is immune from cross-claims, except where Congress has consented to then-consideration. United States v. U.S. Fidelity and Guaranty Co., 309 U.S. at 512, 60 S.Ct. 653. And, with respect to counterclaims against a sovereign where immunity has not been waived, a claimant is limited in his recovery to amounts in re-coupment. Bull v. U.S., 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). A claim for attorney fees is not in the nature of a recoupment, but is rather affirmative relief. See, Woelffer v. Happy States of America, Inc., 626 F.Supp. 499, 503 (N.D.Ill.1985); U.S. ex rel Dept. of Fish and Game v. Montrose, 788 F.Supp. 1485, 1495 (C.D.Cal.1992). Absent an express waiver of sovereign immunity with respect to attorney fees against the plaintiff sovereign, such an award would constitute an impermissible affirmative judgment against the sovereign. Woelffer at 505; United States v. U.S. Fidelity and Guaranty Co., 309 U.S. at 512, 60 S.Ct. 653. And, as noted above, a general waiver of sovereign immunity does not extend to cover attorney fees unless the Tribe makes such a waiver express. Fitzgerald, 554 F.2d at 1189.
Respondents presented numerous eases from various jurisdictions to show that a sovereign may be found to have waived its *142 immunity by voluntarily initiating suit or by entering into a contractual relationship. However, the cases presented are inappo-site to the issues in this case. The Court does not understand Petitioner to raise the question whether the Tribe could have been liable for contractual breach of contract damages in the underlying arbitration, nor does Petitioner question whether it could have been liable for any damages a state court might have assessed it under Oregon Securities Law. Rather, Petitioner presents a very narrow issue: Did the Tribal Sovereign waive its sovereign immunity with respect to the affirmative award of prevailing party attorney fees? Again, none of the cases Respondents put forward address this issue.
To summarize: Nothing in the arbitration provision or any other contract between the Tribe and SWM demonstrated an unequivocal and express waiver of sovereign immunity with respect to an affirmative award of prevailing party attorney fees and costs against the Tribe. And, nothing in the evidence presented to this Court demonstrates that the Grand Ronde Tribal Council either discussed or anticipated that it was authorizing a contract that would place it at risk for attorney fees and costs should it arbitrate claims under the 1992 Agreement. Nothing the Tribe did by way of'filing its suit in Multnomah County Circuit Court can be said to constitute a waiver with respect to an affirmative award of attorney fees and costs.
In the absence of any facts to demonstrate the intent of the Tribal Council to waive its immunity with respect to the recovery of prevailing party attorney fees and costs, it would be improper for this Court to imply a waiver that was nowhere expressed by , the Tribal Council, either explicitly or implicitly.
2. PARADIGM AND M \RK SIZE-MORE
Respondents point to the 2002 Stipulation wherein the Tribe agreed to arbitrate its claims against these Respondents as providing the requisite waiver of sovereign immunity. This reliance is misplaced.
In order to decide this case, it is not necessary for this Court to determine whether or not the attorney for the Tribe had specific authority to enter into the stipulation and to arbitrate the Tribe’s claims against Respondents Paradigm and Mark Sizemore. This is so because the issue here is not the waiver with respect to the agreement to arbitrate; rather, the issue is the scope of the waiver, if any. In this instance, the Court concludes, as above, that even assuming the Tribe waived its immunity with respect to the agreement to arbitrate, there is nothing in the record to demonstrate that the scope of such a waiver covered an affirmative award of prevailing party fees and costs.
Only the Tribe’s governing body, and not the Tribe’s individual members or employees, may waive the Tribe’s immunity. United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894 (1940) It follows that nothing that a Tribe’s attorney does or does not do in prosecuting the Tribe’s case may suffice as a waiver of the Tribe’s immunity. United States v. U.S. Fidelity & Guaranty Co., 309 U.S. at 513, 60 S.Ct. 653; see also, State of Minnesota v. U.S., 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939) (where jurisdiction has not been agreed to by an appropriate waiver of sovereign immunity, stipulation of the sovereign’s attorney is “without legal signifi-canee.”); Missouri River Services, Inc., v. Omaha Tribe of Nebraska, 267 F.3d 848, 853 (8th Cir.2001) (Tribe’s attorney could not expand the scope of the Tribe’s waiver *143 from suit in a pre-hearing submission to the arbitrator.)
Since 1994[8], the Grand Ronde Tribal Code has provided as follows:
“The Tribal Council retains the exclusive authority to waive the sovereign immunity of the Tribe including the Tribal Council members, Tribal Officer, Tribal Attorney, Tribal staff and committee members from suit. Any such waiver must be expressly and specifically authorized by Tribal Council Resolution.” Tribal Government Organization and Procedures Ordinance, Tribal Code Section 210(c)(2)
No evidence has been provided to the Court that the Tribe’s legislative body— i.e., the Tribal Council—clearly and expressly waived the Tribe’s immunity from suit with respect to Paradigm and Mark Sizemore’s affirmative recovery of prevailing party attorney fees. Even if, as Respondent contends, the Tribal Council approved the original filing of the Mult-nomah County Circuit Court case, for the reasons discussed above, that action alone would not demonstrate the requisite express and unequivocal waiver of sovereign immunity for an affirmative award of prevailing party attorney fees and costs.
As noted above in the discussion regarding the EAJA, prior to the adoption of the EAJA, attorney fees were not historically assessed against the federal government, even when the United States as a plaintiff availed itself of statutes containing prevailing party attorney fee and cost “fee shifting” provisions. Having not affirmatively opened itself to risk under state or federal fee shifting statutes, the Tribe is entitled to the same historical protections here.
Respondents raise additional defense, including:
C. WAIVER AND ESTOPPEL
A claim of sovereign immunity is a “jurisdictional prerequisite which may be asserted at any state of the proceedings.” United States v. Sherwood, 312 U.S. 584, 586-87, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941); Ramey Construction Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 318 (10th Cir.1982); California v. Quechan Tribe of Indians, 595 F.2d 1153, 1154 n. 1 (9th Cir.1979); Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 34 (5th cir. 1992) cert. denied, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993).
The Tribe is not subject to claims of waiver or estoppel when it raises the defense of sovereign immunity. Resolution Trust Corporation v. Miramon, 935 F.Supp. 838, 841 (E.D.La.1996).
D. RES JUDICATA
The issue presented in this case was never before the Multnomah County Circuit Court. This Court reviewed the orders from the Multnomah County Circuit Court case, and none is res judicata with respect to issues determined here.
E. NO JUSTICIABLE CONTROVERSY
Even though Respondents have not yet sought to enforce their award in state court, the Final Award is currently bearing interest at 12% per annum. Petitioners clearly have an interest in having their jurisdictional claims determined as soon as possible.
IV. SUMMARY
This Court need not look to the specific provisions of either the Federal *144 Arbitration Act or the Oregon Arbitration Act (“Arbitration Acts”) in order to make its determination. It is not the case, as Respondents contend, that if the arbitrators simply “got it wrong” on the legal issue of the waiver of sovereign immunity, then Petitioner is limited to the specific and limited review provisions of the Arbitration Acts for its remedy. Because sovereign immunity is jurisdictional it may be raised at any point in a proceeding. When reviewing an arbitration award in the context of a claim of sovereign immunity, the court is not limited in its review, but reviews the issue of jurisdiction issue de novo. Missouri River Services, Inc. v. Omaha Tribe of Neb., 267 F.3d 848, 852 (8th Cir.2001).
Upon its de novo of the limited question of whether the Tribe waived its sovereign immunity with respect to the affirmative award of prevailing party attorney fees and costs, this Court finds that the Tribe did not waive its sovereign immunity in any of the agreements it entered into with Respondents, nor did the Tribe waive its immunity when it chose to file suit under the Oregon Securities Laws or when it stipulated to arbitrate its claims with Respondents Paradigm and Mark Sizemore.
Because the Tribe did not waive its sovereign immunity with respect to an award of prevailing party attorney fees and costs, the arbitrators had no authority to award prevailing party fees and costs. By doing so, the arbitrators went beyond the terms of the agreement under which the arbitration occurred. Absent a waiver of sovereign immunity, a court has no jurisdiction to enforce such an award.
While this result may strike some as unfair, the Court notes that the doctrine of sovereign immunity has been in existence since the inception of the United States. The Court further points out that all Respondents are savvy businessmen with long histories of business dealings in Indian Country. Even if equity were a defense to the exercise of a sovereign’s immunity from suit, which it is not in this case, these Respondents were in a better position than most both to recognize and to take action to reduce the risks associated with doing business with a Tribal Sovereign.
V. CONCLUSION
The Court concludes that the arbitration panel did not have authority to award attorney fees and costs against the Tribe because the Tribe did not waive its sovereign immunity with respect to such an award. By awarding attorney fees and costs against the Tribe, the arbitration panel thus exceeded the scope of its au-^ thority. For that reason, there is no jurisdiction for the enforcement of that award. That portion of the Final Award in American Arbitration Association Case No. 75 Y 181 00066 03JRJ, Confederated Tribes of the Grand, Ronde Community of Oregon, Claimant and Strategic Wealth Management, Inc., Patrick Sizemore, Paradigm Financial Services, Inc., and Mark Size-more, Respondents assessing attorney fees and costs against the Tribe is void and is hereby vacated.

. The Court takes notice that the Tribal Offices are located in and around the city of Grand Ronde, Oregon and are located on the reservation.

. Specifically, the arbitrators looked to ORS 59.115(10) of the Oregon Securities Law and other unspecified "Oregon Law."

. Respondents drew the Court's attention to its previous decision in Kalantari v. Spirit Mountain Gaming, Inc., Case No. C-02-09-004, arguing that the principles the Court applied in Kalantari also apply here. The Court notes that each alleged waiver of sovereign immunity must be analyzed in its own right and under the facts and circumstances of the particular waiver alleged. Thus, applying the same principles to different facts may lead to a different result.

.28 U.S.C. 2412. Before 1980, 28 U.S.C. 2412 authorized courts to award costs to prevailing parties in civil litigation against the United States, but further provided that the awardable costs did "not includele] the lees and expenses of attorneys.” 28 U.S.C. 2412 (1976).

. Under the American Rule, "absent statute or enforceable contract, litigants pay their own attorneys’ fees,” Alyeska Pipeline Seirice Co. v. Wilderness Society, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)

. The American Rule requires that each part to the litigation pay his own attorney fees *139 unless a statute provides otherwise. There are a several exceptions to the American Rule that have developed over time allowing courts to exercise equitable jurisdiction to impose attorney fees in the absence ol a statutory right. Only one of the exceptions might have been considered by the arbitrators in this matter. A court may have inherent power to award attorney fees when one of the litigants has acted in bad faith, even in the absence of a statutory or contractual right to collect fees. Chambers v. NASCO, Inc.. 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d27(199I). However, absent a waiver of sovereign immunity, a court is prevented from imposing fees in such cases. U.S. v. Horn, 29 F.3d 754 (1st Cir. 1994.)

. Respondent has also pointed the Court to a number of additional cases interpreting sovereign immunity waivers in the context of a contractual arbitration clause, including three cases (Eyak, Validel and Sokaogon) that were mentioned in C & L Enterprises. Although, as Respondents point out, each of the cases re-suited in an award of damages to the contractor, none of these cases directly analyzed the availability of prevailing party attorney fees and costs in the context of sovereign immunity-

. The fact that the this restriction was made explicit in this 1994 Code provision does not lead this Court to believe that the law was different prior to 1994.